# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH A. WAGNER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 13-294E |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 9) will be granted, Defendant's Motion for Summary Judgment (Doc. 12) will be denied, and this case will be remanded for further administrative proceedings.

**BACKGROUND**

Kenneth A. Wagner ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq*. and § 1381 *et seq*. ("Act"). Plaintiff filed for benefits, claiming a complete inability to work as of March 1, 2010, due to a back impairment and depression. (R. at 129-140, 162).[1] An Administrative Law Judge ("ALJ") denied benefits to Plaintiff on

---

[1] References to the administrative record (Doc. 8), will be designated by the citation "(R. at __)".

February 23, 2013, following an administrative hearing. (R. at 19-28). A request for review by the Appeals Council was denied.

The ALJ determined that Plaintiff had medically determinable severe impairments, namely, degenerative disc disease, fibromyalgia, and depression. (R. at 21). However, he had the residual functional capacity ("RFC") to perform light work, except he could only lift 20 pounds occasionally and 10 pounds frequently, sit for four hours, and stand/walk for four hours with a sit/stand option, changing positions with a maximum frequency of 30 minutes. (R. at 23). Plaintiff was limited to simple, routine, and repetitive work that was not fast-paced, and required only occasional interaction with others. (R. at 23). Consistent with the testimony of the vocational expert, the ALJ found that Plaintiff thereby qualified for a significant number of jobs in existence in the national economy, and thus was not disabled within the meaning of the Act. (R. at 27-28).

*Treatment Background*

Plaintiff's primary care physician was Bradley Fell, M.D. (R. 292-332). Plaintiff sought treatment for a sore throat in January 2010, and Dr. Fell reported Plaintiff had no psychiatric complaints, his physical examination was normal, and his gait was normal. (R. at 324). When seen in March, Plaintiff reported arthralgias but denied myalgia,[2] and his gait was normal. (R. at 317). In April, Plaintiff complained of arthralgias and myalgia and Dr. Fell reported his gait was normal. (R. at 314).

When seen in July 2010, Plaintiff complained of back pain stemming from an injury in 1995. (R. at 309). Dr. Fell diagnosed Plaintiff with lumbago, prescribed Flexeril, and referred

---

[2] Arthralgia refers to pain in the joints, and myalgia refers to pain in the muscles. *Dorland's Illustrated Medical Dictionary*, 149, 1214 (32nd ed. 2012).

him for an MRI. (R. at 311). In October, Plaintiff complained of heel pain and increased back pain aggravated with sudden movement. (R. at 305). He stated that he did not want to undergo injection therapy, but that chiropractic treatment helped his pain. (R. at 305). Plaintiff reported that he was "unable to hold his head up the next day" after taking Flexeril, and requested a different medication. (R. at 305). Plaintiff reported depression, but denied anxiety. (R. at 306). Dr. Fell noted that he walked with a "slow gait." (R. at 307). Dr. Fell ordered an MRI, the results of which showed multilevel disc bulges with a small annular tear at the L3-4 level and disc narrowing at the L4-5 level. (R. at 330).

Plaintiff had no musculoskeletal or psychiatric complaints when seen in October 2010, but complained of fatigue, arthralgias, myalgia, dizziness, lightheadedness, and depression at his office visit in November. (R. at 299, 302). Plaintiff's physical examination was normal, and he walked with a normal gait. (R. at 300). Plaintiff complained of back pain, bilateral hip pain, and bilateral foot pain in December 2010. (R. at 295). He denied experiencing dizziness, headaches, lightheadedness, or anxiety, but mentioned he felt depressed. (R. at 295, 297). His physical examination was unremarkable, and he walked with a normal gait. (R. at 296-297). Plaintiff was assessed with chronic pain syndrome. (R. at 297).

In March 2011, Plaintiff complained of bilateral groin pain and it was noted that he walked with a slow gait. (R. at 410). In April, he reported fatigue, arthritis, back pain, bilateral wrist pain, bilateral ankle and foot pain, dizziness, headache, lightheadedness, anxiety and depression. (R. at 292). Dr. Fell noted that his symptomatology was "strongly suggestive of fibromyalgia" and that he had "many tender areas scattered around his body." (R. at 292). He also found Plaintiff was "clearly depressed" and appeared chronically ill and worried.

3

(R. at 292-293). His remaining physical examination was unremarkable, and he walked with a normal gait. (R. at 293-294).

In October 2011, Plaintiff reported that Celexa caused headaches. (R. at 394). He complained of anxiety, depression, arthralgias and myalgia. (R. at 394). Dr. Fell noted that he appeared chronically ill and anxious. (R. at 395). His physical examination was unremarkable, and he walked with a normal gait. (R. at 395). A thoracic spine x-ray in October 2011 showed mild age-indeterminate compression fractures at T8 and T9. (R at 381). A thoracic spine MRI revealed multilevel disc and endplate degenerative changes, small disc protrusions at T2-T3 and T5-T6, a small disc herniation at T7-T8, and mild scoliosis. (R. at 392). In November 2011, Dr. Fell found Plaintiff's entire spine was "a little stiff and sore" on physical examination, although Plaintiff reported feeling better on his medications. (R. at 388, 390).

Plaintiff was also evaluated by Matt El-Kadi, M.D., a neurosurgeon, in October 2010. (R. at 265-266). Plaintiff's physical examination was unremarkable and his EMG study was normal. (R. at 265, 270-272). Dr. El-Kadi concluded that Plaintiff was not a surgical candidate, and recommended treatment at a pain management clinic. (R. at 265, 413).

Plaintiff sought treatment from several pain management specialists (R. at 288-290, 419), the most recent being Richard Plowey, M.D. (R. at 421-424). On December 8, 2011, Plaintiff had multiple pain complaints, and reported that he took Vicodin, ibuprofen and Neurontin with minimal side effects. (R. at 422). Plaintiff walked with a slow gait and was unable to heel walk, but could toe walk and squat with some difficulty. (R. at 422). Plaintiff exhibited tenderness in the lumbar, thoracic and cervical spines, had full muscle strength in the upper and lower extremities, no edema or evidence of effusion, and negative straight leg raise testing bilaterally.

4

(R. at 422). He was diagnosed with lumbar spine pain secondary to discogenic syndrome versus facet arthropathy, lower extremity radicular syndrome, cervical spine pain secondary to discogenic syndrome versus facet arthropathy, thoracic spine pain secondary to discogenic syndrome versus myofascial pain syndrome, and multiple arthralgias and myalgias secondary to degenerative joint disease. (R. at 423). Dr. Plowey recommended a combination of physical therapy, psychotherapy, non-narcotic medications, percutaneous procedures, and, if necessary, narcotic pain medication. (R. at 423). Plaintiff expressed reluctance at undergoing lumbar injections. (R. at 423). Dr. Plowey advised Plaintiff that his narcotic medication would not be adjusted unless he underwent unsuccessful lumbar injections. (R. at 423). Plaintiff was referred to a rheumatologist for evaluation and treatment of multiple arthralgias, and referred to a psychologist for evaluation and treatment of depression, anxiety and chronic pain coping skills. (R. at 423).

On December 13, 2011, Plaintiff telephoned Dr. Plowey's office and complained that his medications caused severe chest pains. (R. at 448). In January 2012, when seen by Mark LoDico, M.D., Dr. Plowey's partner, Plaintiff had multiple pain complaints. (R. at 450). He exhibited a slow and antalgic gait, had tenderness of the lumbar, thoracic and cervical spines, had tenderness of the shoulder joints, knees and ankles, and had normal muscle strength. (R. at 450). His diagnoses remained the same and he was prescribed a Duragesic patch for pain. (R. at 451).

Plaintiff was seen by Erin K. Snell, M.D. on December 27, 2011 for a rheumatology evaluation. (R. at 434-436). Plaintiff complained of chronic pain for which various treatment modalities had been ineffective, except for chiropractic treatment. (R. at 434). He tried antidepressants but they caused headaches, and Celebrex caused chest tightness. (R. at 434).

5

He reported that he currently took Neurontin which caused significant nausea. (R. at 434). Plaintiff further reported that a trial of Morphine caused significant respiratory depression. (R. at 434). On physical examination, Plaintiff exhibited a full range of motion, full strength, equal deep tendon reflexes, and no focal neurological deficits, but he had sixteen out of eighteen positive tender points. (R. at 435). Dr. Snell noted that Plaintiff's exam results were "[d]efinite" for fibromyalgia since he exhibited greater than eleven out of eighteen tender points. (R. at 436). She diagnosed him with depression, chronic pain, borderline ANA and fibromyalgia. (R. at 436). She continued him on Neurontin, started him on Cymbalta, and advised him that he could proceed with back injections. (R. at 436).

Dr. Snell completed a form entitled "Fibromyalgia Residual Functional Capacity Questionnaire" on January 3, 2012. (R. R 443-447). In this questionnaire, Dr. Snell noted that she had only seen Plaintiff for one outpatient visit, but that he met the American College of Rheumatology criteria for fibromyalgia. (R. at 443). She opined that Plaintiff's symptoms, including multiple tender points, nonrestorative sleep, chronic fatigue, breathlessness, anxiety and depression, would "frequently" interfere with his ability to perform simple work tasks, and that he was incapable of even "low stress" jobs. (R. at 443-444). Dr. Snell further opined that Plaintiff could lift less than ten pounds occasionally; sit for only 45 minutes and stand for only 20 minutes at one time; sit and stand/walk for a total of less than two hours in an eight-hour workday; needed to be able to shift from positions at will; would need to take unscheduled breaks one to two times per day; and would be absent from work about four days per month due to his impairment. (R. at 445-446).

Finally, Plaintiff was evaluated at Paoletta Counseling Services in December 2011 for his complaints of depression. (R. at 452-464). His mental status examination was essentially

6

unremarkable, although it was noted that his affect was constricted and he was mildly depressed. (R. at 452). He was diagnosed with depressive disorder not otherwise specified, and assigned a global assessment of functioning ("GAF") score of 45.[3] (R. at 454).

*Plaintiff's Hearing Testimony*

Plaintiff testified that he was unable to work due to chronic pain and depression. (R. at 49; 51). He stated that, in order to alleviate his pain, he needed to lie down once or twice a day for a half an hour to one hour, and used a TENS unit at least once a week if someone was there to help him put it on. (R. at 51, 61). Plaintiff indicated that injection therapy had not alleviated his pain in the past, but that chiropractic therapy had helped "tremendously." (R. at 62). He stated that his pain was constantly a five on a ten point scale, but that pain medication decreased it to a three or four. (R. at 52-53). Plaintiff claimed that his pain interfered with his ability to sleep and affected his ability to concentrate. (R. at 58). Plaintiff testified that his medications caused side effects which he reported to his physician. (R. at 53-54). Plaintiff had partial custody of his four children, and was able to look after them when they were not in school. (R. at 55). He was able to wash dishes, do his laundry, and walk "a little bit" for exercise. (R. at 55-56).

---

[3] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 41 to 50 may have "[s]erious symptoms (e.g., suicidal ideation ....)" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

**ANALYSIS**

While Plaintiff advances several arguments in support of his Motion for Summary Judgment, the Court finds that his argument with respect to the ALJ's evaluation of the opinion evidence is dispositive in this case. Accordingly, the Court will limit its analysis to whether the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Snell, with respect to his functional limitations resulting from his fibromyalgia. (Doc. 10 at pp. 12-15). Dr. Snell rendered an opinion that essentially precluded Plaintiff from working. In rejecting this opinion, the ALJ stated:

> Dr. Snell completed a form indicating that the claimant was unable to perform even "low stress" work, was limited to less than 2 hours of sitting and less than 2 hours of standing/walking during a typical work day, would require unscheduled breaks throughout the day, and would likely miss 4 days of work each month due to his fibromyalgia (Exhibit 29F). This opinion is given little weight because it is not supported by the totality of the objective medical evidence, showing typically normal physical exam findings with normal strength, range of motion, sensation, and no muscle atrophy. Dr. Snell only examined the claimant on one occasion, rendering his opinion less persuasive, and Dr. Snell's exam findings of multiple positive trigger points is not support by the contemporaneous treatment notes from Dr. Plowey which make no mention of positive trigger points or a fibromyalgia diagnosis.

(R. at 25).

The Court of Appeals for the Third Circuit repeatedly has held that "[a] cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a long period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)) (citations omitted); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994). As such, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the

findings of a physician who has examined the claimant only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). A treating source's opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir. 2001); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). However, physician opinions are not binding upon an ALJ, and an ALJ is free to reject a medical source's conclusions. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012). Where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reason for doing so. *See Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Therefore, the ALJ may choose to reject a treating physician's opinion if it conflicts with other medical evidence and the ALJ explains his reasons for doing so.

Even if the ALJ does not afford controlling weight to a treating physician, the ALJ must consider various "factors" to determine how much weight to give the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include: (1) the length of the treatment relationship; (2) the kinds of examinations and testing the treating physician has performed or ordered; (3) evidence that supports the opinion; (4) consistency of the opinion with the entire record; (5) and specialty of the treating doctor. *Id.*

9

Considering the length of treatment factor and specialty factor, the ALJ acknowledged that Dr. Snell was a rheumatologist, but found her opinion was "less persuasive" because she only examined Plaintiff on one occasion. (R. at 25). While an ALJ may assign less weight to a treating physician's opinion on this basis, in light of the deficiencies in the ALJ's analysis with respect to the opinion's supportability and consistency with the record as a whole as discussed below, this reason alone cannot constitute substantial evidence for the rejection of Dr. Snell's opinion.

Regarding the supportability factor, although the lack of objective findings on physical examination is appropriate in evaluating Plaintiff's claimed limitations with respect to his degenerative disc disease, "[t]he problem with looking for independent findings and observations" with respect to fibromyalgia is that the disease "is notable for its lack of objective diagnostic techniques." *Foley v. Barnhart*, 432 F. Supp. 2d 465, 475 (M.D. Pa. 2005). "In fact, 'fibromyalgia patients often manifest normal muscle strength and neurological reactions and have a full range of motion.'" *Lintz v. Astrue*, 2009 WL 1310646 at *7 (W.D. Pa. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007)). Fibromyalgia symptoms include "pain all over," fatigue, disturbed sleep, stiffness, and tenderness occurring at eleven of eighteen focal points. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

Here, a review of the record demonstrates that the ALJ's decision to reject Dr. Snell's opinion rests primarily on the lack of objective physical findings on physical examination. Courts have, however, consistently found error where the ALJ relied on the lack of objective evidence in making the determination that the claimant was not disabled. *See e.g., Henderson v. Astrue*, 887 F. Supp. 2d 617, 636 (W.D. Pa. 2012) ("For the reasons noted by the district court in *Lintz*, supra, it is error for an ALJ to rely on the lack of objective evidence to reject a treating

10

physician's opinion in a disability case involving a diagnosis of fibromyalgia due to the nature of the disease."); *Doychak v. Colvin*, 2013 WL 4766516 at *9 (W.D. Pa. 2013) ("By focusing on the lack of objective testing and objective abnormalities, the ALJ ignored that this type of evidence is of little relevance in reviewing a claim of disability based on chronic pain and fatigue from fibromyalgia[.]") (internal quotations and citations omitted); *Lintz*, 2009 WL 1310646 at *10 (holding that the ALJ's reliance on the lack of objective medical findings was improper with regard to plaintiff's fibromyalgia). The Court finds that the ALJ erred in rejecting Dr. Snell's opinion concerning the Plaintiff's functional limitations based on the lack of objective tests confirming same.

With respect to the consistency factor, the ALJ failed to discuss, in any meaningful fashion, the treatment note entries of Dr. Fell, Plaintiff's primary care physician, in his evaluation of the medical evidence. With respect to these records, the ALJ stated that Plaintiff had "a normal gait" at each office visit. (R. at 25).[4] The ALJ further noted that Plaintiff's "PCP" ordered certain diagnostic studies and referred him for pain management. (R. at 25). That is the extent of the ALJ's discussion with respect to these records. In evaluating a claim for benefits, the ALJ must consider all the evidence in the case. *Plummer,* 186 F.3d at 429. The Third Circuit has also directed that "[w]here competent evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence," *Dobrowolsky v. Califano*, 606 F.2 403, 407 (3d Cir. 1979), and "adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Sykes*, 228 F.3d at 266.

---

[4] Parenthetically, the Court observes that the ALJ's finding with respect to Plaintiff's gait is factually incorrect. Dr. Fell reported that Plaintiff walked with a slow gait in October 2010 and March 2011. (R. at 307, 410).

Absent from ALJ's discussion in this case are treatment note entries reflecting that Plaintiff consistently reported fatigue, muscle aches and pains, and symptoms of depression. (R. at 202, 295, 297, 299, 302, 305-306, 309, 314, 394). Dr. Fell reported in April 2011 that Plaintiff's symptomatology was "strongly suggestive of fibromyalgia" and that Plaintiff exhibited "many tender areas scattered around his body." (R. at 292). He found Plaintiff was "clearly depressed" and appeared chronically ill and worried. (R. at 292-293). In October 2011 he noted that Plaintiff appeared chronically ill and anxious. (R. at 395). In November 2011, Dr. Fell reported that Plaintiff's entire spine was stiff and sore on physical examination. (R. at 390). In sum, Dr. Fell's treatment note entries consistently reference Plaintiff's complaints of pain, as well as physical findings that arguably lend support to Dr. Snell's opinion.

In addition, the ALJ's reliance on Dr. Plowey's treatment note entry as a basis for rejecting Dr. Snell's opinion is misplaced. As the Plaintiff points out, Dr. Plowey was not treating him for fibromyalgia, but rather referred Plaintiff to Dr. Snell for a rheumatological evaluation due to his multiple arthralgias and myalgias. (R. at 423). Thus, the lack of a "fibromyalgia diagnosis" by Dr. Plowey is not necessarily an inconsistency in this case.

As a result of all of the foregoing, the ALJ's reasons for essentially rejecting Dr. Snell's opinion was significantly flawed and, accordingly, not supported by substantial evidence.[5] The remaining question is whether an immediate award of benefits is warranted, or whether the appropriate remedy is a remand for further consideration of Plaintiff's claim. A judicially-ordered award of benefits is justified only where "the evidentiary record has been fully

---

[5] Plaintiff additionally argues that the ALJ failed to fully evaluate Plaintiff's fibromyalgia pursuant to Social Security Ruling 12-2p, 2012 WL 3104869 (Jul. 25, 2012). This regulation provides guidance for determining whether a claimant has a medically determinable impairment of fibromyalgia, and how that condition is evaluated in the disability process. The effective date of this ruling, however, post-dates the ALJ's decision in this case.

developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010). That standard is not satisfied in this case. Accordingly, the proper remedy is a remand for further administrative proceedings. On remand, the ALJ is directed to reconsider the weight to be accorded the treating physician's opinion consistent with the previously described case law, and then reevaluate whether Plaintiff's limitations resulting from his fibromyalgia impact his ability to perform substantial gainful activity. Plaintiff must be afforded "an opportunity to be heard" during the course of the upcoming proceedings. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800–801 (3d Cir. 2010). He can advance his argument regarding the probative value of Dr. Snell's assessment during the course of further administrative proceedings.

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 9**) is **GRANTED**, Defendant's Motion for Summary Judgment (**Doc. 12**) is **DENIED**, and this case is **REMANDED FORTHWITH** for further administrative proceedings consistent with the analyses herein.

IT IS SO ORDERED.


August 6, 2014                                     s\Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States District Judge

cc (via ECF email notification):

All counsel of record

13